[Cite as *Roush v. Blazek*, 2026-Ohio-2806.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
COSHOCTON COUNTY, OHIO

| | |
|---|---|
| FRANCES ROUSH, et al., | Case No. 2025CA0019 |
| Plaintiffs - Appellants | Opinion And Judgment Entry |
| -vs- | Appeal from the Coshocton County Court of Common Pleas, Case No. 2020 CI 0266 |
| JAMES N. BLAZEK, | Judgment: Affirmed |
| Defendant - Appellee | Date of Judgment Entry: July 21, 2026 |

**BEFORE:** Andrew J. King; Robert G. Montgomery; Kevin W. Popham, Judges

**APPEARANCES:** OWEN J. RARRIC, MATTHEW P. MULLEN, WILLIAM TODD DROWN and NANCY ASHBROOK WILLIS, for Plaintiffs-Appellants; CRAIG G. PELINI and KRISTEN E. CAMPBELL, for Defendant-Appellee.

*Montgomery, J.*

{¶1} Plaintiff-Appellant, Frances Roush, appeals the judgment entered following jury trial in the Coshocton County Common Pleas Court in favor of Defendant-Appellee, James Blazek, on Appellant's claim for legal malpractice.

**STATEMENT OF THE FACTS AND CASE**

{¶2} On May 22, 2017, Appellant signed a purchase agreement for a house in Warsaw, Ohio, purchasing the home for $73,000.00. Appellant did not request an independent inspection of the home. Appellant first inspected the attic of the home in

September of 2017 and discovered it was infested with bats and bat guano. Appellant hired Terminix to remove the bat guano and bats from the attic. In 2019, Appellant received a new roof free of cost through the CHIP program.

## Suit Against the Realty Defendants

{¶3} Appellant hired Appellee to represent her in a lawsuit against Carly Thompson, Jason Thompson, and Grason Properties (hereinafter "the real estate defendants") in conjunction with her purchase of the bat-infested house. Appellee filed a complaint against the real estate defendants on March 3, 2019. Appellant terminated Appellee's services on August 1, 2019. Appellant did not hire another attorney, and the case was dismissed with prejudice on October 15, 2019.

## Suit Against Appellee and Summary Judgment Proceedings

{¶4} Appellant retained new counsel and filed the instant action for legal malpractice against Appellee on October 13, 2020. Appellee filed a motion for summary judgment, which was granted by the trial court.

{¶5} Appellant appealed the summary judgment to this Court. We reversed, finding reasonable minds could differ as to whether Appellee breached duties owed to Appellant by failing to communicate settlement offers, failing to act with due diligence in filing discovery, and failing to take reasonable steps to mitigate the consequences to Appellant after his representation of Appellant was terminated. *Roush v. Blazek*, 2023-Ohio-3917 (5th Dist.).

## Jury Trial

{¶6} The case proceeded to jury trial in the Coshocton County Common Pleas Court. The jury returned a unanimous general verdict in favor of Appellee. The jury

answered four interrogatories. The order of the interrogatories first had the jury consider whether Appellant would have recovered damages in the underlying lawsuit against the real estate defendants. The jury unanimously found in response to Interrogatory One that Appellant proved by a preponderance of the evidence that the real estate defendants committed fraud. In response to Interrogatories Two and Three, the jury unanimously found Appellant did not prove the real estate defendants breached a contract or a fiduciary duty owed to Appellant. The jury unanimously found in Interrogatory Four that the fraud committed by the real estate defendants did not proximately cause damage to Appellant. In accordance with the instructions on Interrogatory Four, the jury proceeded to enter a general verdict in favor of Appellee, without considering the remaining interrogatories regarding duty, breach of duty, and comparative negligence. The trial court entered judgment in accordance with the jury's verdict.

{¶7} It is from the August 29, 2025, judgment of the trial court Appellant prosecutes her appeal, assigning as error:

{¶8} "I. THE TRIAL COURT ERRED BY ENTERING JUDGMENT ON A VERDICT THAT FOUND FRAUD (THEREBY NECESSARILY FINDING PROXIMATELY CAUSED DAMAGES) YET ANSWERED A SEPARATE INTERROGATORY ON PROXIMATELY CAUSED DAMAGES IN THE NEGATIVE, CONTRARY TO THE COURT'S INSTRUCTIONS AND OHIO LAW."

{¶9} "II. THE TRIAL COURT ERRED BY ALLOWING DEFENSE EXPERT TESTIMONY THAT CONTRAVENED THE LAW OF THE CASE AND TREATED INDEPENDENT BREACHES OF DUTY AS NON-ACTIONABLE."

{¶10} "III. THE TRIAL COURT ERRED BY SUBMITTING VERDICT FORMS AND JURY INTERROGATORIES THAT PREVENTED THE JURY FROM DECIDING INDEPENDENT THEORIES OF LEGAL MALPRACTICE SUPPORTED BY THE PLEADINGS AND THE EVIDENCE."

{¶11} "IV.    THE TRIAL COURT ERRED BY REFUSING TO INSTRUCT THE JURY THAT IT COULD AWARD NON-ECONOMIC DAMAGES FOR MENTAL ANGUISH AND EMOTIONAL DISTRESS RESULTING FROM FRAUD."

## I.

{¶12}  In her first assignment of error, Appellant argues the trial court erred in entering judgment in favor of Appellee because the jury interrogatories are inconsistent with each other and with the general verdict.  We disagree.

## STANDARD OF REVIEW

{¶13}  Civ.R. 49(B) provides in pertinent part:

When the general verdict and the answers are consistent, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial.

{¶14}  The remedies provided under Civ.R. 49 cannot be exercised in total once the jury is excused. Therefore, any objections to interrogatories must be raised while the jury is still impaneled and the court has the full range of choices before it.  *Shoemaker v. Crawford,* 78 Ohio App.3d 53, 61 (10th Dist. 1991).

{¶15}  Prior to the discharge of the jury, the trial court read the interrogatory responses and general verdict.  The trial court invited the attorneys to the bench for a sidebar to review the verdict and interrogatories.  After both attorneys declined to have the jury polled, the trial court discharged the jury.  The trial court asked counsel to stay in the courtroom and asked to have the jury returned to the jury room, where he would later thank them for their service.

The judge accepted the verdict of the jury in the presence of the lawyers. The following colloquy then occurred:

MR. DROWN: Your Honor, I don't know if it's appropriate or not, but we would like to make a motion to set aside the verdict based on the full weight of the evidence. We think the jury lost its way.

And the other issue the jury found there was fraud but awarded no damages.

MS. WILLIS: Not even nominal.

MR. DROWN: Not even nominal damages. So I think there is – so I would like to make that motion now. Unfortunately, I'm not if I'm supposed to but I'm going to make it just the case [sic]. Because it doesn't make any sense.

THE COURT: That's fine. I will give Mr. Pelini a chance to respond, but it's my understanding that's motion practice. Check the civil rules on when that's required in terms of timing …. The oral motion is denied, but I think that that's actually motion practice post verdict, and, again, check the civil rules on that.

Tr. 1030-31.

{¶16} Appellant argues her motion was timely because while the jury was technically discharged, the jury was still in the building and available to be recalled to reconsider the verdict. We disagree. It is apparent from the record that the trial court believed the motion was too late, and Appellant should therefore file a post-judgment motion on the issue. Appellant did not ask for the jury to be recalled to reconsider the interrogatories and verdict. Appellant was given an opportunity to review the verdict and interrogatories at sidebar prior to the time the jury was discharged. Further, the proposed interrogatories ultimately submitted by the trial court were filed by Appellee a week before trial, giving Appellant time

before trial to observe the potential inconsistency between interrogatories one and four[1] and time before the jury was discharged to object to the inconsistency. However, Appellant failed to object until after the jury was formally discharged. We therefore find the plain error standard of review is applicable to this assignment of error.

{¶17} Civil plain error is defined by the syllabus of *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997):

> In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.

{¶18} The plain error doctrine originated as a criminal concept. *Id*. at 121. "In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Id*.

## ANALYSIS

{¶19} In the instant case, the jury found in Interrogatory One that Appellant had proven by a preponderance of the evidence that the real estate defendants had committed

---

[1]The potential inconsistency between Interrogatories One and Four is apparent on their face. Interrogatory One asked if the jury found fraud, which requires a finding of proximate cause as an element of the tort. Interrogatory Four asked the jury, if they answered yes to Interrogatory One, do they find damages proximately caused to Appellant. We find the potential for inconsistent answers was apparent from the face of the interrogatories, and yet Appellant did not object until after the discharge of the jury.

fraud. To prove fraud, a plaintiff must establish the following elements: (1) a representation, or silence where there is a duty to disclose, (2) which is material to the transaction, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to its truth that knowledge may be inferred, (4) with the intent to mislead another into relying on it, (5) justifiable reliance on the representation, and (6) resulting injury proximately caused by the reliance. *Health & Wellness Lifestyle Clubs v. Valentine,* 2021-Ohio-42, ¶ 24. Therefore, in order to find fraud on the part of the real estate defendants, the jury must find the real estate defendants proximately caused damage to Appellant.

{¶20} Interrogatory Four asked the jury, if it answered Interrogatory One (fraud), Two (breach of contract) or Three (breach of fiduciary duty) in the affirmative, to find whether the fraud proximately caused damages. The jury answered this question negatively. The answers to Interrogatories One and Four are therefore inconsistent with each other.

{¶21} Interrogatory Four instructed the jury, if it found the real estate defendants did not proximately cause damages to Appellant, to return a general verdict for Appellee. The general verdict entered by the jury is inconsistent with its finding on Interrogatory One, but consistent with the answer to Interrogatory Four.

{¶22} We find this is not the exceptional case requiring reversal for plain error. Although Interrogatory One is inconsistent with the verdict, Interrogatory Four is consistent with the verdict. It is therefore not clear from the record that the general verdict in favor of Appellee, which was signed by all eight jurors, failed to express the intention of the jury. The jury's error in its answers to the interrogatories could have been in finding fraud in response to Interrogatory One, rather than in finding no proximately caused damages in response to Interrogatory Four. We therefore do not find this is the exceptional case where the error

complained of by Appellant "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss* at syllabus.

{¶23} The first assignment of error is overruled.

## II.

{¶24} In her second assignment of error, Appellant argues the testimony of Appellee's expert witness, Gary Corroto, violated the law of the case as set forth in this Court's prior opinion, and as such his testimony was inadmissible. We disagree.

### STANDARD OF REVIEW

{¶25} "A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.,* 58 Ohio St.3d 269, 271 (1991).

### APPLICABLE LAW

{¶26} The law of the case doctrine provides that a decision of a reviewing court in a case remains the law of the case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. *U.S. Bank v. Detweiler,* 2012-Ohio-73, ¶ 26 (5th Dist.), *citing Nolan v. Nolan*, 11 Ohio St.3d 1 (1984). "After a reviewing court has reversed and remanded a cause for further action in the trial court, and the unsuccessful party does not prosecute review to the Supreme Court, the pronouncement of the law by the intermediate court becomes the law of the case and must be followed by the lower court in subsequent proceedings in that case." *Pavlides v. Niles Gun Show, Inc.,* 112 Ohio App.3d 609, 615 (5th Dist.1996).

## ANALYSIS

{¶27} At the outset, we note Mr. Corroto testified solely as to whether Appellee breached a duty owed to Appellant and did not testify as to the merits of the underlying lawsuit against the realty defendants. Because the jury found no damages were proximately caused by the conduct of the realty defendants, the jury entered a general verdict in favor of Appellee without ever reaching the question of whether Appellee breached a duty owed to Appellant. Therefore, we find Mr. Corroto's testimony did not contribute to the verdict in the instant case, and the admission of his testimony is therefore moot.

{¶28} Further, we find the admission of the testimony did not violate the law of the case doctrine. Over Appellant's continuing objection, Mr. Corroto testified that even if Appellee failed to communicate a settlement offer, there would be no damage to Appellant because she had no intention of accepting a settlement offer. Tr. 865-66. He also testified Appellee had no authority to act on her behalf after Appellant terminated Appellee's representation, and there would have been no negative consequences in the underlying lawsuit had Appellant timely hired a new attorney. Appellant argues this testimony was inadmissible as in violation of the law of the case from this Court's prior opinion in this matter:

> The evidence demonstrates there are genuine issues of material fact as to whether appellee took reasonable steps to mitigate the consequences to appellant after August 1, 2019. *Jackson v. McKinney*, 2nd Dist. Montgomery No. 26288, 2015-Ohio-1977. The motion to compel filed on August 12, 2019, the judgment entry granting the motion to compel and ordering responses by September 23, 2019, and the October 10, 2019 judgment entry of dismissal were

served only on appellee, not on appellant. Appellee testified that once he was terminated, he had no authority to act on behalf of appellant. Further, that on November 5, he notified appellant the case had been dismissed, and advised her to immediately hire new counsel. Finally, appellee stated appellant was aware the interrogatories were due.

Appellant testified she was not aware of the entry granting the motion to compel or the show cause order because appellee did not contact her to tell her about them. Further, appellant stated appellee did not send her or offer to send her the file for the case until she called him in July of 2020 to ask for her file. Heath opined that appellee did not take steps to protect appellant's interest after the August 1, 2019 termination because he did not give notice to the client of the motions and orders, and he did not allow reasonable time for employment of other counsel. Heath concluded appellee "fail[ed] to take adequate measures to prevent prejudice to Mrs. Roush's interests." Heath stated this breach of duty proximately damaged appellant.

The trial court focuses on whether appellant would have done something differently had she been aware of the motions or orders. However, this is not determinative of whether appellee breached his duty to appellant. Further, we find the cases cited by the trial court and appellee deal with when the statute of limitations accrues on a legal malpractice claim, which is not at issue in this case.

*Roush,* 2023-Ohio-3917, at ¶¶ 42-44.

**{¶29}** On the issue of communication of settlement offers, this Court held:

An attorney's failure to disclose a settlement offer to a client may expose the attorney to a claim of legal malpractice. *Krahn v. Kinney*, 43 Ohio St.3d 103, 538 N.E.2d 1058 (1989). Whether appellant would have accepted the settlement offer is not determinative of whether appellee breached his duty as her attorney to present her the offer, particularly on a summary judgment motion, when the allegations must be construed most favorably towards appellant.

Id. at ¶ 34.

{¶30} In our prior opinion, we considered the evidence in the context of the summary judgment standard of review, which determines whether, viewing the evidence in a light most favorable to the Appellant, reasonable minds could differ on whether Appellee violated a duty owed to Appellant. In so doing, we found whether Appellant would have accepted a settlement offer or whether she would have suffered less damage had she hired a new attorney in a timely manner were not determinative of the issues *on summary judgment.* Nothing in this Court's prior opinion precluded Appellee from presenting Mr. Corroto's testimony at trial. The admission of Mr. Corroto's expert testimony did not violate the law of the case doctrine in the instant case, as this Court made no determination of what evidence may or may not be admissible on remand but only determined there were genuine issues of material fact which precluded summary judgment.

{¶31} The second assignment of error is overruled.

### III.

{¶32} In the third assignment of error, Appellant argues the order of the interrogatories submitted to the jury improperly prohibited the jury from considering the

"some evidence" doctrine of legal malpractice damages and allowed the jury to resolve the case solely on the basis of the "case within-a-case" doctrine of damages. We disagree.

## STANDARD OF REVIEW

{¶33} Appellant did not object to the order in which the interrogatories was submitted to the jury.[2] We therefore must find plain error in order to reverse. The plain error standard applicable in a civil case is set forth in our discussion of Appellant's first assignment of error.

## ANALYSIS

{¶34} Appellant argues the ordering of the interrogatories allowed the jury to enter judgment in favor of Appellee on the "case within-a-case" doctrine of legal malpractice damages, without considering the "some evidence" theory of damages.

{¶35} In *Vahila v. Hall,* 77 Ohio St.3d 421, 427-28 (1997), the Ohio Supreme Court recognized that the plaintiff in a legal malpractice case need not always prove he or she would have won the underlying lawsuit in order to prove that damages were caused by the attorney's breach of duty:

> Accordingly, we hold that to establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct

---

[2] Appellant argues she was given only fifteen minutes to review the proposed jury instructions and interrogatories. However, at the point in time at which the trial court gave the parties fifteen minutes to review the instructions and interrogatories, the trial court specifically noted on the record it had previously "warned" Appellant that it was leaning toward using Appellee's proposed interrogatories and instructions. Tr. 929. Further, these proposed interrogatories were filed by Appellee on August 12, 2025, one week before the start of the jury trial.

complained of and the resulting damage or loss. We are aware that the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case. Naturally, a plaintiff in a legal malpractice action may be required, depending on the situation, to provide some evidence of the merits of the underlying claim. See Note at 671; and *Krahn*, 43 Ohio St.3d at 106, 538 N.E.2d at 1062. However, we cannot endorse a blanket proposition that requires a plaintiff to prove, in every instance, that he or she would have been successful in the underlying matter. Such a requirement would be unjust, making any recovery virtually impossible for those who truly have a meritorious legal malpractice claim.

**{¶36}** However, the Ohio Supreme Court later recognized there are still some cases to which the "case within-a-case" doctrine applies:

Here, appellees' sole theory for recovery is that if the underlying matter had been tried to conclusion, they would have received a more favorable outcome than they obtained in the settlement. Therefore, unlike the plaintiffs in *Vahila*, who sustained losses regardless of whether their underlying case was meritorious, appellees here could recover only if they could prove that they would have succeeded in the underlying case and that the judgment would have been better than the terms of the settlement. Thus, the theory of this malpractice case places the merits of the underlying litigation directly at issue because it stands to reason that in order to prove causation and damages, appellees must establish that appellant's actions resulted in settling the case for less than appellees would have received had the matter gone to trial.

This type of legal-malpractice action, then, involves the case-within-a-case doctrine. That is, the plaintiff must establish that he would have been successful in the underlying matter. In this type of action, it is insufficient for the plaintiff to present simply "some evidence" of the merits of the underlying claim. To permit the plaintiff to present merely some evidence when the sole theory is that that [sic] the plaintiff would have done better at trial would allow the jury to speculate on the actual merits of the underlying claim. Thus, in the case sub judice, appellees had the burden of proving by a preponderance of the evidence that but for appellant's conduct, they would have received a more favorable outcome in the underlying matter. Of course, the burden of proof for establishing a case within a case is the same burden the plaintiff would have had to satisfy if the underlying case had gone to trial. See Restatement of the Law 3d, Law Governing Lawyers (2000) 390, Section 53, Comment b.

*Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.,* 2008-Ohio-3833, ¶¶ 19-20.

{¶37} In the instant case, Appellant proceeded on a case within-a-case theory of damages throughout the proceedings. In her complaint for legal malpractice, Appellant alleged, "But for Defendant's actions, Plaintiff would have succeeded on the merits in the Lawsuit and would have been entitled to recover the damages alleged in the Lawsuit." Complaint, 10/13/20, ¶ 16. In opening statement, Appellant argued:

This case is in many ways a case-within-a-case. The first case is the one Francess would have won against her realtor Carly Thompson, her husband Jason Thompson, and their company Grason Properties LLC for selling her a home infested with bats.

The second case, the one you are hearing now is against her lawyer James Blazek, who mishandled the first case so badly that Frances never got her day in court.

So you will be examining two legal cases today and deciding several things: Would Frances Roush have won her case against the Thompsons but for Mr. Blazek's malpractice? And, two, and if so, what is fair compensation for the actual harm and the emotional harm that her grandchildren have suffered?

Tr. 65.

{¶38} Appellant filed proposed jury instructions with the court on August 11, 2025. Appellant included the following instruction in her proposed jury instructions under the heading, "Legal Malpractice Involving an Underlying Case (Case Within a Case)":

In legal malpractice claims like this, known as a "case within a case," the plaintiffs must prove not only that the defendant was negligent, but also that they would have achieved a better outcome in the Prior Case if the defendant had met the required standard of care. This requires proving the merits of the prior Case alongside the malpractice claim. The issues that would have been decided in the Prior Case will be decided here, with the defendant standing in the place of the original defendants in that case (Grason Properties, LLC, Carly Thompson, and Jason Thompson). The plaintiffs bear the same burden of proof they would have had in the Prior Case. You may consider whether the defendant's negligence has made it more difficult for the plaintiffs to prove what the outcome of the Prior Case would have been.

{¶39} Finally, in closing argument, Appellant argued throughout that everything flowed from the actions of Carly Thompson. Tr. 956, 962-64, 991. Because Appellant argued this case throughout the proceedings in the trial court under a case within-a-case theory, we do not find plain error in the ordering of the interrogatories, which required the jury to find in favor of Appellee if it found Appellant would not have recovered in the underlying lawsuit, without first deciding whether Appellee breached a duty owed to Appellant. While perhaps the better order of the interrogatories would have been in the traditional ordering of the elements of malpractice, beginning with duty and a breach of duty, we find this is not the exceptional case in which the ordering of the interrogatories constituted plain error.

{¶40} The third assignment of error is overruled.

## IV.

{¶41} In her fourth assignment of error, Appellant argues the trial court erred by failing to instruct the jury it could award non-economic damages for mental anguish and emotional distress resulting from fraud. We disagree.

### STANDARD OF REVIEW

{¶42} A trial court has discretion as to whether to give a requested jury instruction based on the dispositive issues presented during trial. *Renfro v. Black,* 52 Ohio St.3d 27, 30 (1990). "It is the duty of a trial court to submit an essential issue to the jury when there *is* sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue." *Id., quoting Bostic* v. *Connor,* 37 Ohio St.3d 144, 147 (1988). This Court reviews a trial court's decision as to whether to give a requested instruction for an abuse of discretion. *Becker v. Direct Energy, LP,* 2018-Ohio-4134, ¶ 76 (2d Dist.). Abuse of

discretion is defined as more than an error of law, but a decision that is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

## ANALYSIS

{¶43} Appellant argues on appeal that the trial court erred in failing to instruct the jury she could receive non-economic damages for mental anguish for fraud caused by the real estate defendants. However, Appellant requested only an instruction on *serious* emotional distress caused by the real estate defendants. In her proposed jury instructions filed August 11, 2025, Appellant requested the following instruction:

1. GENERAL

If you find for the plaintiffs on their claims, you may award damages for any serious emotional distress proximately caused by the conduct of Grason Properties, LLC, Carly Thompson, and/or Jason Thompson.

2. SERIOUS EMOTIONAL DISTRESS

"Serious emotional distress" means emotional injury that is both genuine and serious. It is more than mere upset, hurt feelings, or trivial anxiety. It exists when a reasonable person, normally constituted, would be unable to cope adequately with the mental distress caused by the defendant's conduct.

3. FACTORS YOU MAY CONSIDER

In deciding whether the plaintiffs have suffered serious emotional distress, you may consider:

    1.    Whether they expressed more than a general concern or worry;

2.      Whether they experienced insomnia, anxiety, depression, or other stress-related conditions;

3.      Whether they sought medical, psychiatric, or counseling treatment;

4.      Whether they consulted with clergy or other advisors about their distress;

5.      Whether they showed physical symptoms caused by the emotional distress; and

6.      Whether their testimony is corroborated by other witnesses or evidence.

{¶44}  When Appellant objected to the trial court's failure to instruct the jury on non-economic damages, including damages for emotional distress, the trial court denied the instruction on the basis Appellant did not testify that she experienced any measurable harm from the experience. Tr. 936. Appellant testified when she saw the bat guano in the attic, she was devastated that she had her family in the house, and she was upset that she was lied to about the condition of the house. She testified about the fear her grandchildren had of the bats, and her fear that her grandchildren would get rabies. She testified that she was devastated when she learned an inspection conducted for a previous potential purchaser of the home had reported the bat infestation.

{¶45}  We find the trial court did not abuse its discretion in finding the testimony of Appellant did not rise to the level of serious emotional distress required by the jury instruction requested by Appellant. While Appellant testified to being upset by the presence of the bats

and the fact that she was lied to by the real estate defendants, her testimony did not include factors which could lead the jury to conclude she suffered serious emotional distress.

{¶46} The fourth assignment of error is overruled.

## CONCLUSION

{¶47} For the reasons stated in our accompanying Opinion, the judgment of the Coshocton County Court of Common Pleas is Affirmed.

{¶48} Costs are assessed to Appellant.

By: Montgomery, J.

King, P.J. and

Popham, J. concur.